IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| DEMETRIO PARRA-ELIZALDE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. 4:22-cv-00420-DGK |
| | ) | Crim. No. 4:18-cr-00138-02-DGK |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITIONER'S SECTION 2255 MOTION TO VACACTE, SET ASIDE, OR CORRECT HIS SETENCE**

Now before the Court is Petitioner Demetrio Parra-Elizalde's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Civ. Case, Mot. to Vacate, ECF No. 2.[1] He argues he should be resentenced because his attorney ("Trial Counsel") was constitutionally ineffective in various ways, including failing to file a notice of appeal despite Petitioner's request to do so. *Id.* The Government opposes the motion, Civ. Case, Opp'n, ECF No. 7, and Petitioner has filed a reply, Civ. Case, Reply, ECF No. 12. Since this case involves a dispute as to whether Trial Counsel failed to follow his request to file a notice of appeal, the Court appointed Petitioner counsel and held an evidentiary hearing. *See Witthar v. United States*, 793 F.3d 920, 923–24 (8th Cir. 2015).

Based on a review of the entire record, the Court finds that Petitioner has failed to prove his claims. Thus, the Court DENIES the motion and declines to issue a certificate of appealability.

**Background**

On May 23, 2018, Petitioner and three co-conspirators were indicted for a multi-year methamphetamine distribution conspiracy in the Western District of Missouri. Crim. Case, ECF

---

[1] The Court refers to the docket entries in Petitioner's civil case as "Civ. Case, ECF No. __," and it refers to the docket entries in Petitioner's criminal case as "Crim. Case, ECF No. __."

No. 1. Nearly two years later, in the same case, Petitioner and another co-conspirator were charged via an information with conspiracy to commit money laundering for the same time period covered by the separately charged drug conspiracy. *Id.*, ECF No. 74. According to that information, Petitioner and his co-conspirator would receive cash proceeds from the drug sales and then have other individuals deposit those proceeds into bank accounts that could be accessed by the ultimate supplier of the methamphetamine in Mexico. *See id.*

On March 16, 2020, Petitioner entered into a plea agreement with the Government where he agreed to plead guilty to the conspiracy to commit money laundering crime charged in the information. Crim. Case, ECF No. 75 at ¶ 2. As part of that agreement, Petitioner pled guilty to orchestrating and managing a scheme to deposit cash proceeds from methamphetamine sales into bank accounts that were accessed by the Mexican suppliers of the methamphetamine. *Id.* at ¶ 3. Petitioner further acknowledged that he could be sentenced up to 20 years for the crime, and that the Court ultimately would decide his sentence. *Id.* at ¶¶ 5–6. Petitioner further agreed to waive his rights to appeal or collaterally attack his guilty plea and sentence except for ineffective assistance of counsel, prosecutorial misconduct, and an illegal sentence. *Id.* at ¶ 15.

That same day, the Court held a change of plea hearing. Crim. Case, ECF No. 164. Petitioner does not speak or understand English, so the Court enlisted the services of an interpreter. *Id.* at 2:06–07. At the hearing, Trial Counsel noted that due to Petitioner's inability to understand English, he also used the same interpreter to discuss Petitioner's plea agreement with him prior to the hearing. *Id.* at 5:04–6:05. Trial Counsel noted that Petitioner was able to understand the agreement during their lengthy discussion, and Petitioner even suggested several corrections to the agreement that needed to be made and understood some of the "subtleties" of the agreement. *Id.* at 5:04–6:05, 11:12–16. And based on the Court's entire plea colloquy with Petitioner, the Court

2

Case 4:18-cr-00138-DGK   Document 170   Filed 06/07/23   Page 2 of 10

is confident that he fully understood the plea agreement, the sentence he faced, and the nature of the entire proceeding against him.

Petitioner made several relevant acknowledgements at the plea hearing. First, he agreed that there were no other promises or agreements other than the plea agreement that caused him to plead guilty. *Id.* at 6:14–17. Second, Petitioner stated he was satisfied with Trial Counsel and had no complaints about his representation. *Id.* at 11:21–12:01. Third, he acknowledged that his decision to plead guilty was his decision alone and based solely on his agreement with the Government. *Id.* at 12:08–12:18. Fourth, he acknowledged that the Court could sentence him anywhere in the range of 0 to 20 years' imprisonment. *Id.* at 13:01–09. Fifth, and relatedly, he acknowledged that Trial Counsel could only give him an *estimate* on how the Sentencing Guidelines would be calculated, the Court would make the ultimate calculation, and the Court could go above or below the Sentencing Guidelines. *Id.* at 20:08–24. Sixth, he acknowledged the existence and scope of his appellate and collateral attack waiver. *Id.* at 21:03–10.

The case was then set for sentencing on July 20, 2022. The Presentence Investigation Report ("PSR") recommended a guideline range of 210 to 240 months' imprisonment, with 240 months' imprisonment being the statutory maximum. Crim Case, ECF No. 94 at ¶ 87. Trial Counsel filed a sentencing memorandum seeking 74 months' imprisonment that included a reduction for his assistance as well as a credit for time served in a separate case in California state court. Crim Case, ECF No. 116. The Government filed a motion for a downward departure that sought a sentence of 120 months' imprisonment to be run concurrently with his California state court conviction and a credit for time served in that case. Crim Case, ECF No. 141. They both echoed these positions at the sentencing hearing. Crim. Case, ECF No. 165 at 10–12.

3

At sentencing, the Court calculated the guidelines at 210 to 240 months' imprisonment. In applying the § 3553(a) factors, the Court noted Petitioner's significant role in the money laundering conspiracy, *id*. at 4:06–09, 7:23–25, 12:20–22, his relevant conduct of selling methamphetamine in a separate case, *id*. at 8:20–25, and his assistance to law enforcement, *id*. at 12:16–20. The Court ultimately found that these facts as well as the application of other § 3553(a) factors warranted a sentence of 120 months' imprisonment. *Id*. at 13:05–10. The Court also noted it rarely runs such a sentence concurrently with unrelated state cases, but it did so here. *Id*. at 13:12–16. The Court did not give Petitioner credit for time served. Petitioner did not appeal.

Petitioner has filed the instant motion seeking to vacate his sentence. Petitioner alleges that Trial Counsel was ineffective in three ways: (1) he was ineffective at the plea stage by inducing Petitioner to unknowingly plead guilty based on the alleged promise that Petitioner would only receive a 90-month sentence; (2) he was ineffective at the sentencing stage by failing to adequately argue how the Court should give credit for the time Petitioner had already served on the state case; and (3) he was ineffective at the post-sentencing phase by failing to file a notice of appeal despite Petitioner asking him to do so. Because of the latter argument, the Court set this case for an evidentiary hearing, appointed counsel, and heard evidence.

At the evidentiary hearing, Trial Counsel testified that he met with Petitioner following the sentence. Civ. Case, Tr. at 7, ECF No. 16. He advised Petitioner about the advantages and disadvantages of appealing, and Petitioner told him he did not want to appeal. *Id*. at 7–8. He also testified that he never told Petitioner he would serve the full 120 months because he did not know at the time whether and how the Bureau of Prisons would give Petitioner a reduction for time served under the state sentence. *Id*. at 8–9. He further testified that he did not tell Petitioner that the undersigned would be upset if Petitioner appealed. *Id*. at 10. He also testified that he never

4

promised Petitioner a particular sentence. *Id*. Based on Trial Counsel's testimony, his demeanor while testifying, and the testimony's consistency with the record, the Court finds that Trial Counsel's entire testimony was credible and reliable.

Petitioner also testified through an interpreter and via a livestream video feed from FCI Elkton, where he was housed. The Court was able to hear his entire testimony and judge his demeanor. Petitioner testified that a fellow inmate had prepared his motion and affidavit, and he never read it after it was prepared. *Id*. at 12. Petitioner said he simply signed the document. *Id*. Petitioner testified that he asked Trial Counsel whether it was a good idea to appeal, and Trial Counsel told him it was not and the judge would get upset. *Id*. at 13. Petitioner eventually conceded on cross-examination that he never asked Trial Counsel to file a notice of appeal. *Id*. at 15. This latter admission contradicts the affidavit Petitioner filed in support.

Based on Petitioner's testimony, his demeanor while testifying, and the inconsistencies between his testimony and the record evidence, the Court finds Petitioner's testimony was not completely credible. Contrary to Petitioner's claims, the Court finds that Trial Counsel never told Petitioner that the undersigned would be upset if he appealed. But the Court finds that Petitioner was credible in testifying that he never asked Trial Counsel to appeal.

**Standard**

A motion under § 2255 provides "federal prisoners with a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (internal quotation marks omitted). To succeed on an ineffective-assistance-of-counsel claim, Petitioner "must show [1] that counsel's performance was deficient, and [2] that the deficient performance prejudiced the defense." *Haney v. United States*, 962 F.3d 370, 373 (8th Cir. 2020) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To satisfy the deficiency prong,

5

Petitioner must establish that Trial Counsel's performance fell "below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." *United States v. Ngombwa*, 893 F.3d 546, 552 (8th Cir. 2018) (internal quotation marks omitted). For his claim that Trial Counsel's sentencing advice impacted the voluntariness of the plea, Petitioner must show that Trial Counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (internal quotation marks omitted).

Prejudice is established by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *O'Neil v. United States*, 966 F.3d 764, 771 (8th Cir. 2020). Reasonable probability "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). To prove prejudice in the plea context, Petitioner must typically "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Covington v. United States*, 739 F.3d 1087, 1090 (8th Cir. 2014) (quoting *Hill*, 474 U.S. at 59). To prove prejudice for his sentencing-phase claim, he must typically show that "there is a reasonable probability [he] would have received a shorter sentence if counsel had not been ineffective in presenting [his] case for a reduced sentence." *United States v. Parrott*, 906 F.3d 717, 720 (8th Cir. 2018) (internal quotation marks omitted).

A slightly different set of rules applies to Petitioner's notice-of-appeal claim. "[W]hen an attorney disregards specific instructions from a defendant to file a notice of appeal, he acts in a manner that is professionally unreasonable." *Dressen v. United States*, 28 F.4th 924, 928 (8th Cir. 2022) (internal quotation marks omitted). If this occurs, then "prejudice is presumed because the defendant has forfeited his right to an appellate proceeding as a result of his counsel's error." *Id.* (internal quotation marks omitted). And where, as here, Petitioner and Trial Counsel have

6

submitted conflicting stories about the existence of instructions, the Court must typically hold an evidentiary hearing to determine whose account is more credible. *Id.*

## Discussion

Petitioner argues that Trial Counsel was ineffective in three respects: (1) he caused Petitioner to involuntarily plead guilty based on his incorrect advice that Petitioner would only receive a 90-month sentence; (2) he failed to adequately argue how the Court should give Petitioner credit for the time Petitioner had already served on the state case; and (3) he was ineffective at the post-sentencing phase by failing to file a notice of appeal despite Petitioner asking him to do so. The Court addresses each argument in turn.

### I. Trial Counsel was not ineffective for his alleged pre-plea sentencing advice.

Petitioner first argues that Trial Counsel told him that he would only receive a 90-month sentence if he pled guilty. Petitioner argues that this faulty advice rendered his plea involuntary.

This argument is meritless. As noted above, Trial Counsel testified that he did not promise him any particular sentence. This testimony was credible and consistent with the record, while Petitioner's contrary statements in his affidavit are neither credible nor consistent with the record.

As an initial matter, Petitioner testified that he never even read his affidavit or motion before filing it; it was written by another person. So the statements contained therein have no veracity. Moreover, Petitioner's testimony at the plea hearing contradicts his affidavit and motion. At the plea hearing, Petitioner confirmed that no other promises were made to him other than what was contained in the plea agreement, that Trial Counsel's sentencing advice was only an estimation, that he could be sentenced anywhere in the range from 0 to 20 years' imprisonment, and that the Court would be solely responsible for determining his sentence. *See Walker v. United States*, 810 F.3d 568, 578 (8th Cir. 2016) (finding similar evidence contradicted a petitioner's

7

claims that she was induced to plead guilty based on inaccurate sentencing advice from her counsel). Thus, the Court finds that Trial Counsel was not deficient in the plea phase.

Even if his Trial Counsel was deficient, Petitioner has not shown prejudice. He did not testify that he would have proceeded to trial if he did not plead guilty. *See Covington*, 739 F.3d at 1090. And even if he had done so, he has not shown that he would have received a shorter sentence. *See id.* In fact, it is likely that he would have received a much higher sentence because he would have faced not only the money laundering charge but also the distribution conspiracy charge that was dismissed. And had Petitioner proceeded to trial, it is unlikely that the Government would have filed a downward departure motion and he would not have received acceptance of responsibility points. Moreover, where, as here, Petitioner was "informed of the maximum possible sentence permitted by the statute and the court's ability to sentence in that range," "inaccurate advice of counsel about sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty." *Walker*, 810 F.3d at 578. So even if Trial Counsel had been deficient, Petitioner suffered no prejudice.

## II. Trial Counsel was not ineffective for an alleged failure to properly argue how Petitioner should receive credit for the time he served in his state court case.

Petitioner next argues that his counsel did not properly advocate for Petitioner to receive credit off his sentence for the time he served as part of his state court sentence.

Much like the first argument, this argument is also meritless. As an initial matter, Trial Counsel advocated for Petitioner to be credited for the time he served on his state court sentence in his sentencing memorandum and again at the hearing. So he was not deficient because it was crystal clear to the Court what Petitioner was requesting; the Court simply disagreed with the request. The Court does not typically credit time served for state court sentences where, as here, they are for separate criminal charges.

8

Even if Trial Counsel had advocated for credit in a different way or more fervently, it would not have changed the outcome. The § 3553(a) factors warranted a more significant sentence than what Petitioner requested. Petitioner was a significant player in a high-level money laundering scheme that ultimately facilitated the repeated sale and distribution of methamphetamine in the Kansas City area. Due to Petitioner's assistance to the Government, he already received a sentence of half the upper Sentencing Guideline range. The Court was not going to lower this already reduced sentence even more given Petitioner's actions in this case. In fact, Petitioner received the absolute lowest sentence the Court would have rendered in these circumstances. So Petitioner has not shown prejudice, either. *Parrott*, 906 F.3d at 720.

### III. Trial Counsel did not fail to file a notice of appeal.

Petitioner argues that Trial Counsel failed to file a notice of appeal after sentencing despite being asked to do so. Trial Counsel filed an affidavit contradicting this claim.

The Court carefully listened to both accounts at the hearing, and it ultimately finds that Petitioner did not ask Trial Counsel to file a notice of appeal. Both Petitioner and Trial Counsel testified that Petitioner did not ask Trial Counsel to file a notice of appeal. And the only contrary evidence in the record is Petitioner's affidavit and motion. But as noted above, Petitioner testified at the hearing that he did not prepare those documents or read them before signing them. So they carry no evidentiary value.

The Court, thus, finds that Petitioner did not ask Trial Counsel to file a notice of appeal. *See Dressen*, 28 F.4th at 928.

### IV. A certificate of appealability will not be issued.

Petitioner can only appeal if a certificate of appealability is issued by this Court or a circuit judge. *See* 28 U.S.C. § 2253(c)(1)(B). Since Petitioner has not made a substantial showing of the

denial of a constitutional right or raised a debatable issue among reasonable jurists, this Court declines to issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**Conclusion**

Petitioner's motion to vacate, set aside, or correct his sentence is DENIED. The Court declines to issue a certificate of appealability.

And one final point bears mentioning. Petitioner's decisions to have a fellow inmate prepare his affidavit and motion and then to file those documents without reading them could have had disastrous consequences. Petitioner received an exceptional plea deal from the Government, and a very lenient sentence from this Court. Had Petitioner been successful on this motion, it is likely that he would have received a much more severe sentence because he could have been found guilty of both conspiracy charges based on the overwhelming evidence and would not have received any credit for assisting the Government. In the future, Petitioner should make sure he reads and understands any documents before filing them with the Court.

**IT IS SO ORDERED.**

Date:  June 7, 2023  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT